**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CIVIL ACTION NO. 5:12-CV-13**


**LISA CURTIS, individually and as**
**next friend of the minor child T.H.,**
**PLAINTIFFS**

**V.**

**CORY HAMBY**
**DEFENDANT**

**MEMORANDUM OPINION**


This matter is before the Court on Defendant's Motion for Summary Judgment (Docket No. 20). Plaintiffs have responded (Docket No. 25). Defendant has replied (Docket No. 28). In addition, Plaintiffs moved for dismissal of Defendant's motion for summary judgment (Docket No. 24). Defendants have responded to that motion (Docket No. 27), and Plaintiffs have replied (Docket No. 29). Finally, Plaintiffs filed a second Motion to Dismiss Summary Judgment (Docket No. 30), and Defendant has responded (Docket No. 31). For the below reasons, Defendant's motion for Summary Judgment is **GRANTED.**


**BACKGROUND**


Plaintiffs Lisa Curtis and the minor child T.H. claim that in the late hours of September 26, 2011, Defendant and other law enforcement officers entered their home at 190 Adams Mill Road in Cadiz, Kentucky (Docket No. 1) while Plaintiffs were sleeping. Plaintiffs allege that they awakened to find Defendant inside their home and that he "ordered" Curtis to allow additional law enforcement to enter (Id.).

Defendant alleges that that on September 25, 2011, the Trigg County Sheriff's Office asked him to assist in serving a felony arrest warrant for Christopher Herndon, Curtis's son (Docket No. 20 at 1). The arrest warrant lists 190 Adams Mill Road as Herndon's last known address (Docket No. 20-2). Officers were unable to locate Herndon at this time. On September 26, 2011, Herndon's father told officers that Herndon had been with Curtis that day (Docket No. 20 at 2). Accordingly, the officers returned to Curtis's home to continue their search. Lieutenant Dane Hughes and Sergeant Jimmy Godair of the Trigg County Sheriff's Office approached the front door; Defendant, along with two other officers, approached the back door (Docket No. 20 at 2). When Lieutenant Hughes knocked on the front door, Defendant saw a man who both he and another officer thought was Herndon sit up on the couch; the man did not answer the door (Docket No. 20 at 2). Defendant thought that the man's actions were in response to Lieutenant Hughes's knocking (Docket No. 20-1 at 30). Defendant also saw Curtis in the home at this time. Defendant claims that he opened the door and asked Curtis if he could enter (Docket No. 20 at 2), and she complied. Upon entering, the officers discovered that the man on the couch was not Herndon.

Curtis then brought suit against Defendant, asserting violation of her own rights and those of the minor child T.H., on whose behalf she sues as next friend (Docket No. 1). Plaintiffs allege violation of their civil rights under 42 U.S.C. § 198, claiming violation of the Fourth and Fourteenth Amendments. They further allege the state law tort of trespass.

## STANDARD

A movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are "material" in a summary judgment inquiry only when they could affect the case's outcome under the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Stated differently, "it is the substantive law's indication of which facts are critical and which facts are irrelevant that governs." *Id.* Furthermore, an issue of material fact is "genuine" only when "the evidence is such that a reasonable party could return a verdict for the nonmoving party." *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

"Where a defendant moves for summary judgment based on qualified immunity . . . the ultimate burden of proof is on the plaintiff to show the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). This is a shifting burden that begins with the defendant bearing

> the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question. Thereafter, the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct.

*Id.* (citing *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir.1992)).

## DISCUSSION

### I. Curtis cannot represent T.H. as next friend *pro se.*

The complaint lists Curtis as Plaintiff in both her individual capacity and as next friend of T.H., her minor child. A minor who lacks an appointed representative may sue by a next friend

who will represent the minor in pursuing the action. Fed. R. Civ. P. 17(c). However, in a civil rights action, "parents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative." *Peterson v. Child Protective Services*, 2010 WL 1334289 at *2 (W.D. Ky. 2010) (quoting *Shepherd v. Wellman*, 313 F.3d 963, 971 (6th Cir. 2002)).

Curtis's attorney of record moved to withdraw as counsel from the case (Docket No. 13). That motion was granted on December 12, 2012 (Docket No. 14). Subsequently, Curtis chose not to secure replacement counsel. Because Curtis cannot appear *pro se* on behalf of T.H., the claims filed on behalf of T.H. can be dismissed. However, the Court will also consider the merits of the merits of the claims of T.H. in its discussion below.

## II.     Because Defendant is entitled to qualified immunity, Curtis's § 1983 claim fails.

### a.     A two-step analysis determines whether an officer is entitled to qualified immunity.

Government officials who are sued in their individual capacities are protected from liability by the doctrine of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*.

A two-step analysis determines whether a plaintiff can overcome a government official's qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the facts must indicate that the officer violated a constitutional right. *Id*. Second, the plaintiff's evidence must be sufficient to create a genuine issue of material fact as to whether the defendant committed the illegal acts. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992); *Adams v. Metiva*,

31 F.3d 375, 386 (6th Cir. 1994). A successful claimant "must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights such that mere negligence or recklessness is insufficient." *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999) (citing *Harlow*, 457 U.S. at 815-19). Therefore, "a government employee will be shielded from liability so long as the employee acted under the objectively reasonable belief that his or her actions were lawful." *Ahlers*, 188 F.3d at 373 (citing *Harlow*, 457 U.S. at 815-19).

Defendant has met his initial burden of coming forward with facts suggesting that he is entitled to qualified immunity (Docket No. 20, 8-12). The burden has shifted to Plaintiffs to establish that Defendant's conduct violated a clearly established right and was not objectively reasonable. Plaintiffs fail to demonstrate a genuine issue of material fact as to whether Defendant committed acts that violated their clearly established rights. Accordingly, Defendant is entitled to qualified immunity for the § 1983 claim.

**b. Plaintiffs have failed to demonstrate a genuine issue of material fact as to whether Defendant committed acts that violated their clearly established rights.**

Plaintiffs claim that Defendant violated their Fourth and Fourteenth Amendment rights by entering their home without either consent or appropriate justification. The Fourth Amendment ensures "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Because the Fourth Amendment has been incorporated by the Fourteenth, it applies to state and local governments.

Plaintiffs do not contend that the arrest warrant was invalid or that the police lacked reasonable grounds to believe that Herndon was inside the home. Rather, they argue that Defendant entered the house and searched it without either a search warrant or probable cause (Docket No. 1 at 3). However, Defendant did not enter Plaintiff's residence unlawfully. The

warrant for Herndon's arrest gave police the authority to enter the residence to effect the arrest, provided that they reasonably believed that he was present in the house. "[A]n arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest." *Steagald v. U.S.*, 451 U.S. 204, 222 (1981). Furthermore, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). The law enforcement officers, including Defendant, were attempting to execute a warrant for Herndon's arrest. This warrant listed 190 Adams Mill Road as Herndon's last known address, and Defendant reasonably believed that he saw Herndon in the house. Accordingly, such entry was authorized.

Furthermore, Defendant's entry did not violate the knock-and-announce rule. Among the elements of the Fourth Amendment reasonableness inquiry is whether police knocked, announced their presence, and waited a reasonable time before entering a house to execute an arrest warrant. *See Wilson v. Arkansas*, 514 U.S. 927, 929 (1995). "Absent certain exigent circumstances, it is unreasonable under the Fourth Amendment for an officer to enter a dwelling without first knocking and announcing his presence and authority." The knock-and-announce rule applies even to entries based upon valid warrants, unless they are excused by exigent circumstances. *Hickey v. Hayse*, 188 F.Supp.2d 722, 728 (W.D. Ky. 2001).

To determine whether Defendant complied with the knock and announce rule, the Court must "analyze the facts and circumstances on a case-by-case basis." *U.S. v. Pinson*, 321 F.3d 558, 566 (6th Cir. 2003). Viewing Plaintiffs' version of the facts in their most favorable light, Defendant's entry did not violate the knock-and-announce rule. Although an officer may not forcibly enter the home unless he has been refused admittance, "the refusal may be

constructively or reasonably inferred from the circumstances." *U.S. v. Young*, 609 F.3d 348 (4th Cir. 2010). Defendant thought that Lieutenant Hughes knocked on the front door; he then saw a man who he reasonably thought to be Herndon sit up in response but fail to answer the knock (Docket No. 20 at 2). After Defendant observed the man sit up in response to the knock, he reasonably assumed that the man's failure to acknowledge the knock within a reasonable time implied a constructive refusal of admittance, particularly given the brief amount of time it would have taken for the man to open the door. *See U.S. v. Pennington*, 328 F.3d 215, 221 (6th Cir. 2003) ("[T]he amount of time officers need to wait before entering a home necessarily depends on how much time it would take for a person in the house to open the door.") (quoting *Spikes*, 159 F.3d at 927).

Because Defendant's actions were reasonable, Plaintiffs' constitutional rights were not violated. Consequently, Defendant is entitled to qualified immunity. Plaintiffs' cause of action under § 1983 must be dismissed.

### III.     Plaintiffs' trespass claim fails as a matter of law.

In addition to their constitutional claims, Plaintiffs also sue under state law for intentional trespass under the Court's pendent jurisdiction. A court may decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) "if it has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367. "[G]enerally, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Taylor v. First of America Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). "A district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."

*Landefield v. Marion General Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Because this Court has dismissed Plaintiffs' federal claims, it may also dismiss their claims for trespass under Kentucky law.

"Trespass to realty is an entry on another's possession unlawfully and with force." *Hickey v. Hayse*, 188 F.Supp.2d 722, 729 (quoting 87 C.J.S. *Trespass* § 12 (1954)). Because Defendant did not enter Plaintiffs' property unlawfully, this claim must fail. The law enforcement officers, including Defendant, were attempting to execute a warrant for Herndon's arrest. This warrant listed 190 Adams Mill Road as Herndon's last known address, and Defendant reasonably believed that he saw Herndon in the house. "[A]n arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest." *Steagald v. U.S.*, 451 U.S. 204, 222 (1981). Furthermore, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980).

"[A] law enforcement officer is privileged to commit a trespass if he is exercising his lawful authority and if he exercises it in a reasonable manner, causing no unnecessary harm." *Downs v. U.S.*, 522 F.2d 990, 1003 (6th Cir. 1975). Because Defendant exercised his lawful authority in a reasonable manner and caused no unnecessary harm, no cause of action exists for trespass, and any state law claim would be "needless[]." *Landefield*, 994 F.2d at 1182. Accordingly, the trespass claim is dismissed.

**CONCLUSION**

Defendant's Motion for Summary Judgment is **GRANTED.**  This case is dismissed in its entirety.

cc:  Counsel and Lisa Curtis